UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cr-20715-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MIGUEL MESA,

    Defendant.
    _____/

## ORDER ON EMERGENCY MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon Petitioner Miguel Mesa's Emergency Motion for Compassionate Release (COVID-19), ECF No. [959] ("Motion"), filed on November 22, 2021.[1] The Government filed a Response in Opposition. ECF No. [960]. Mesa filed a Reply, ECF No. [966], and four Supplements in support of his Motion. *See* ECF Nos. [968], [970], [980], [981]. The Court has reviewed the Motion, the Response, the Reply, the Supplements, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

**I.   BACKGROUND**

On January 25, 2017, Mesa pleaded guilty to a single count of conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349. ECF No. [154]. He was sentenced to a term of imprisonment of 100 months, followed by 3 years of supervised release. ECF No. [505]. Mesa is currently housed at Federal Prison Camp, Montgomery (FPC Montgomery), and is scheduled to be released from custody on July 6, 2025. ECF No. [981-1] at 2. Mesa is 62 years of age and, under

---

[1] This case was originally assigned to Judge Marcia Cooke. It was reassigned to the undersigned on January 27, 2023. *See* ECF No. [1007].

the elderly offender program, he becomes eligible to be considered for home detention on December 20, 2023. *Id*.

In his Motion, Mesa argues that extraordinary and compelling reasons warrant a reduction in his sentence. ECF No. [959] at 13. First, he argues that the COVID-19 pandemic, in combination with his underlying medical conditions and the congregate nature of prison confinement, place him at a grave risk of suffering severe illness from a COVID-19 infection. *See id.* at 18. Relatedly, he asserts that he cannot become fully vaccinated because he suffered a "severe allergic reaction" from his first Pfizer shot. *Id*. at 19. He also argues that he has served a significant portion of his sentence, which he believes was unusually harsh in the first place, and, in his circumstances, constitutes a "*de facto* life sentence." *Id*. at 20-22. He additionally argues that compassionate release was granted to Anita Sgarro, his co-defendant, who had a 116-month sentence compared to Mesa's 100 months. *Id*. at 24. Lastly, Mesa asserts that he "poses no significant risk of recidivism" and he has made significant efforts at rehabilitation. *Id.* at 24-25.

Mesa supported his Motion with his inmate medical records, letters of support, a letter from the Warden denying his request, additional BOP records, and an affidavit from a registered nurse who, upon review of Mesa's medical records, concludes that, due to Mesa's "pre-existing medical conditions, his prior surgeries, and his age, Mr. Mesa is highly susceptible to serious illness or death should he contract COVID-19." ECF No. [959-2] ¶ 15.

In Response, the Government argues that Mesa has failed to assert "extraordinary and compelling" circumstances as defined by the Sentencing Commission's policy statement, § 1B1.13. ECF No. [960] at 1. The Government further argues that Mesa "is a classic recidivist,' and Mesa's case is distinguishable from the case of Anita Sgarro's case. *Id*. at 5-6. The Government further contests Mesa's argument that he is essentially serving a life sentence, because

"[h]e was a healthy man when he entered prison," and "his claims of ill health are exaggerated." *Id.* at 6. The Government argues that none of Mesa's health issues "give rise to release," even if some of those conditions make him more susceptible to severe COVID-19 illness. *Id.* at 8. Lastly, the Government asserts that Mesa cannot claim COVID-19 susceptibility as an extraordinary circumstance if he has refused his second vaccination "without a valid medical excuse[.]" *Id.* at 9.

Mesa contests the Government's arguments in his Reply. ECF No. [966]. His Supplements discuss the rate of COVID-19 infections in Montgomery, Alabama, and at the FPC Montgomery. ECF Nos. [968], [970], [980], [981]. In his second and third Supplements, Mesa additionally asserts that that his youngest daughter, Cynthia, suffers from cancer and that Mesa was her primary caregiver prior to his incarceration. ECF Nos. [970] at 3; [980] at 2. Mesa's wife assumed those caregiving responsibilities when Mesa was incarcerated. ECF No. [980] at 2. Mesa attached to his third supplement a letter from Cynthia's doctor, stating that "family support and more importantly the support and presence of her stepfather [Mesa] is medically necessary and will be a tremendous advantage at this very crucial and sensitive time in Cynthia's life." ECF No. [980-1].

The Government has not responded to Mesa's Supplements.

**II.    LEGAL STANDARD**

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Mesa seeks relief specifically under the compassionate release provision, § 3582(c)(1)(A), which states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>>    . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The current policy statement provides that

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the

factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)(A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

**Commentary**

**Application Notes:**

1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) **Medical Condition of the Defendant.**—

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health

>    because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>    (C) **Family Circumstances.**—
>
>    >    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>    >
>    >    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>    (D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2018) ("U.S.S.G.").

Although the existing policy statement still assumes compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons," the United States Court of Appeals for the Eleventh Circuit decided that § 1B1.13 is applicable for all § 3582(c)(1)(A) motions, whether filed by the BOP or by a defendant directly, and courts do not have discretion to develop "other reasons" to justify a reduction in a defendant's sentence. *United States of America v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021). Accordingly, the Court must apply § 1B1.13 to determine whether extraordinary and compelling circumstances exist.

Moreover, § 3582 delineates how this Court should analyze whether a defendant is entitled to a sentence modification.

>    *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id*. *Third*, the Court should turn to the "extraordinary and compelling reasons" test . . . . And *fourth*, the Court should determine whether the

defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020).

Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013). Through this lens, the Court considers the instant Motion.

### III. DISCUSSION

#### A. Exhaustion of administrative remedies

As an initial matter, the Court recognizes that Mesa has satisfied the administrative exhaustion inquiry of the compassionate release analysis, *see* ECF No. [959-1] at 1, and the Government does not dispute that the exhaustion requirement has been satisfied. However, as explained below, Mesa fails to demonstrate that extraordinary and compelling circumstances exist in this case.

#### B. Extraordinary and compelling circumstances

##### i. Mesa's medical conditions

Recently updated CDC guidance indicates that the following health conditions can make adults of any age more likely to get severely ill due to COVID-19: cancer; chronic kidney disease; chronic lung diseases, including asthma (moderate to severe) and pulmonary embolism; cystic fibrosis; dementia or other neurological conditions; diabetes (type 1 or type 2); disabilities; Down syndrome; heart conditions, such as heart failure, coronary artery disease, cardiomyopathies, or

hypertension; HIV infection, immunocompromised state (weakened immune system); mental health conditions; overweight and obesity; physical inactivity; pregnancy; sickle cell disease or thalassemia; current or former smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; substance use disorders; and tuberculosis.[2]

Mesa has convincingly shown that he has several medical conditions that place him at a higher risk of experiencing severe illness as a result of COVID-19. In addition to being elderly, Mesa has obesity, hypertension, and a substance abuse disorder, ECF No. [959-5], each of which, according to the CDC, place individuals at greater risk of severe COVID-19 illness. Mesa is at an additionally heightened risk because he is not fully vaccinated.[3] ECF No. [959] at 19.

However, in keeping with § 1B1.13,[4] in order for Mesa's medical conditions to provide justification for compassionate release, the Court must find that Mesa is either suffering from a terminal illness, or that his serious physical or medical conditions, or serious functional or cognitive impairments, substantially diminish his ability to provide self-care and from which he is not expected to recover. See U.S. Sent'g Guidelines Manual § 1B1.13, cmt. 1(A). The record in this case does not support either finding.

Mesa has not shown what § 1B1.13 requires: that his medical conditions "substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility[.]" "The BOP Director has not found COVID-19 alone to be a basis for compassionate

---

[2] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated February 10, 2023).

[3] The Court will not delve into the parties' dispute as to whether Mesa had a medical reason to refuse the second offered Pfizer vaccination. Either way, the Mesa's Motion would be denied.

[4] *Bryant* makes clear that this Court is strictly confined to consideration of only the three circumstances described in the Sentencing Guidelines in determining whether extraordinary and compelling circumstances exist. 996 F.3d at 1248.

release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence[.]")). Moreover, Mesa's data about the high rate of COVID-19 infections in Alabama, in prisons, and at FPC Montgomery, are somewhat outdated.[5] FPC Montgomery is no longer on Operational Level 3, ECF No. [970] at 1, but Level 2. *See FPC Montgomery*, Federal Bureau of Prisons, *available at* https://www.bop.gov/locations/institutions/mon/ (accessed on February 15, 2023).

While the Court is certainly sympathetic to Defendant's health conditions and his concerns regarding COVID-19 outbreaks in prison facilities, Defendant's medical records do not support the conclusion that he is unable to perform activities of daily living or provide self-care. Indeed, the fact that Mesa has apparently avoided COVID-19 infection during his incarceration indicates that his methods of prevention have sufficed. Accordingly, Mesa has not shown that he suffers from a medical condition that would justify compassionate release.

    ii.   <u>Mesa's daughter</u>

As noted above, Mesa asserts in his second and third Supplements that his youngest daughter, Cynthia, suffers from cancer and that Mesa was her primary caregiver prior to his incarceration. ECF Nos. [970] at 3; [980] at 2. Mesa's wife assumed those caregiving responsibilities when Mesa was incarcerated. ECF No. [980] at 2. According to Cynthia's doctor, "family support and more importantly the support and presence of her stepfather [Mesa] is medically necessary and will be a tremendous advantage at this very crucial and sensitive time in Cynthia's life." ECF No. [980-1].

---

[5] Of course, the Court does not fault Mesa for the outdated data. The Court recognizes that Mesa's data was current at the time his Motion was filed.

The Court is sympathetic to the difficult circumstances faced by Cynthia and her family. However, as noted above, *Bryant* prohibits this Court from finding extraordinary and compelling circumstances beyond the three described in § 1B1.13. *Bryant*, 996 F.3d at 1248. While "Family Circumstances" is one such circumstance, it could only apply in these circumstances if Cynthia's primary caregiver – her mother – died or become incapacitated. *See* U.S. Sent'g Guidelines Manual § 1B1.13, cmt. 1(C)(i). Those circumstances are not present.

### iii.  Mesa's remaining arguments

Mesa's remaining arguments in support of compassionate release do not constitute extraordinary circumstances. Mesa's strides toward rehabilitation, his low risk of recidivism, and his allegedly harsh sentence are not "extraordinary and compelling circumstances," according to § 1B1.13. Nor is the disparity between Mesa and his co-defendant, Anita Sgarro, who was released in 2020. The Government is correct that the factual circumstances between Sgarro and Mesa are distinguishable in several respects. ECF No. [960] at 5-6. Ultimately, however, the critical difference between the two is that Sgarro's Motion for Compassionate Release was granted before the Eleventh Circuit published *Bryant*, 996 F.3d at 1248. When the Court granted Sgarro's Motion for Compassionate Release, the Court explained that it was not limited to the three narrow extraordinary and compelling circumstances listed in § 1B1.13, cmt. n.1. *See* ECF No. [959-4] at 14. According to *Bryant*, however, the Court is so limited. 996 F.3d at 1263-64. Although Defendant makes a compelling case that *Bryant* was wrongly decided, *see* ECF No. [959] at 9-12, this Court is nonetheless bound by it.

Mesa has therefore failed to establish that extraordinary and compelling circumstances warrant compassionate release in his case. Due to that failure to establish extraordinary and

compelling circumstances, the Court need not address the remaining considerations under § 3553(a) or § 3142(g).

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Mesa's Emergency Motion for Compassionate Release (COVID-19), **ECF No. [959]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 15, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record